IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MICHAEL A. SVEUM,

                   Petitioner,                                    OPINION AND ORDER

v.                                                  12-cv-808-wmc

JEFFREY PUGH, Warden,
Stanley Correctional Institution,

                   Respondent.

Petitioner Michael A. Sveum seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging the validity of his state court conviction for aggravated stalking in violation of Wis. Stat. §§ 940.32(3)(b) and 939.05 as a party to a crime.  After conducting a preliminary review of the petition, this court directed respondent to show cause why relief should not be granted.  The respondent filed an answer, along with records from the relevant state court proceedings, and both parties subsequently submitted briefing.  Because Sveum is not entitled to the relief sought, his petition will now be denied.

BACKGROUND

After Sveum was charged in Dane County Circuit Court Case No. 03CF1783, He filed more than one pretrial motion to suppress evidence seized by police pursuant to a

warrant, including one which allowed police to attach a Global Positioning System or GPS tracking device to his car.  The facts underlying the charged offense and the pretrial suppression proceedings were summarized in state court as follows:

> In 1996, "Sveum was charged with stalking and harassing Jamie Johnson [(Johnson)], his former girlfriend." *State v. Sveum (Sveum I)*, 220 Wis. 2d 396, 399, 584 N.W.2d 137 (Ct. App. 1998). "He was also charged with violating a harassment injunction for contacting [Johnson] personally and by telephone" and "criminal damage to property." *Id*.  Sveum was convicted of all charges, which the court of appeals affirmed. *Id*. He was sentenced to 11 years of probation for the stalking conviction that commenced upon serving three consecutive, three-year prison terms for the remaining three convictions. Sveum remained in confinement until his mandatory release date of July 2, 2002, when he was released on probation and parole.

> In March 2003, Johnson reported to the police that she believed Sveum was stalking her again. On April 22, 2003, Detective Mary Ricksecker (Ricksecker) requested circuit court authorization to install and monitor an electronic device on Sveum's vehicle. Specifically, she requested to attach a GPS tracking device to Sveum's vehicle, a 1980 black Chevy Beretta Coup with a Wisconsin license plate number of 754 ELL and a Vehicle Identification Number (VIN) of 1G1LZ14A2LY130646, and to monitor the tracking device "inside such private and public areas."  She further requested "permission to obtain a key to operate the motor vehicle, if necessary" and "to use the same methods to retrieve the device."  Finally, she requested "that the order be authorized for a period of time not to exceed 60 days from the date the order is signed."

> Ricksecker filed an affidavit in support of this request, alleging that GPS monitoring of Sveum's vehicle "could provide relevant information to the criminal investigation of the crime of stalking."  Ricksecker averred the following:

>> That the affiant is a state certified law enforcement officer currently assigned as Detective with the Madison Police Department. Your affiant has worked full-time as a law

enforcement officer for a[p]proximately 22 years. Your affiant has investigated numerous cases involving harassing phone calls, violation of restraining orders, domestic violence, sexual assaults and stalking. Your affiant has received formal training in the investigation of stalking and has trained law enforcement officers on the investigation of the crime of Stalking, in violation of Wisconsin Statute 940.32.

On 12-21-1994 Michael A[.] Sveum, dob 08-04-67, was convicted of Violation of a Domestic Abuse Order . . . . The complain[an]t in the case was Jamie Johnson. On 12-11-1995 Sveum was convicted . . . of Violation of a Domestic Abuse Order. Your Affiant knows the facts in this case were based on hang-up calls received by Jamie Johnson at her residence.

On 10-09-1996 Sveum was convicted . . . of Felony Stalking, Violation of a Harassment Restraining Order, and Harassment. The victim in this case was Jamie Johnson. Your affiant investigated this criminal case and knows the facts of the complaint. Johnson was receiving hang-ups during the course of the criminal behavior, which ceased upon him becoming incarcerated. Two hours after Sveum was released on bail . . . she reported a hang-up call.

. . .

[Sveum] is currently employed in the City of Madison and living at 6685 Cty Tk K Blue Mounds.

On 3-28-03 Jamie Johnson a resident in the City of Madison reports that where she currently resides with the phone number is [ ].  Since 3-3-03 thru 4-12-03 she and her housemate have received nine hang-up calls at that number. She reports that the caller ID information lists "PRIVATE". She indicates prior to this they have not had any hang-up calls. Johnson advised your affiant that TDS Metrocom is the service provider for [her phone number]. Your affiant believes the information provided by Johnson to be truthful and

3

reliable as it was gained by her as a witness to the events above.

Your affiant contacted TDS Metrocom for records of the incoming hang-up calls reported by Johnson. Your affiant believes the information kept by TDS . . . to be truthful and reliable as it [is] kept in the normal course of business. Your affiant knows that hang-up calls could be criminal harassment or felony stalking.

From the information provided by TDS Metrocom and information from the Dane County 911 dispatch center, your affiant learned the hang-up calls were made from pay phones located at the Meadowood Library 5740 Raymond Rd, Party City located at 223 Junction Rd., American TV located at 2404 W. Beltline hwy, Super America located at 2801 Fish Hatchery Rd, Kohl's food store located at 3010 Cahill Rd, and Kitt's Korner Sports Bar and Grill located at 3738 County Rd P.  All of these locations are in the County of Dane. Your affiant believes the information provided by 911 Dispatch to be truthful and reliable as it is kept in the normal course of business.

Your affiant has found in the course of this investigation that Michael Sveum is the primary user and/or exercises dominion and control over a 1980 black Chevy Beretta Coup with a Wisconsin license plate number of 754 ELL and a VIN number of 1G1LZ14A2LY130646, which is stored and/or parked at an address of 6685 County Trunk K in Iowa County, Wisconsin or stored or parked at 2426 Valley Street, Cross Plains in Dane County, Wisconsin, herein after referred to as "the Target Vehicle." . . .

[A] records check with the Wisconsin Department of Transportation . . . indicate[d] the owner of the aforementioned Target Vehicle . . . [is] Michael Sveum with a VIN number of 1G1LZ14A2LY130646, at an address of 2426 Valley Street, Cross Plains, Dane County, Wisconsin.

. . .

4

Your affiant believes that Sveum . . . maintains dominion and control over as well as being the primary user of the aforementioned vehicle.

. . .

Your affiant states that there is probable cause to believe based on the above information that the Target Vehicle is presently being utilized in the commission of a crime to wit, stalking . . . . Your affiant states that there is probable cause to believe that the installation of a [GPS] tracking device on the Target Vehicle in conjunction with the monitoring, maintenance and retrieval of information from that [GPS] tracking device will lead to evidence of the aforementioned criminal violations including the places of the violation and the means of the violation and the identification of associates assisting in the aforementioned violations.

Your affiant states that the [GPS] tracking device, which is covertly placed on a criminal suspect's automobile, is equipped with a radio satellite receiver, which, when programmed, periodically records, at specified times, the latitude, the longitude, date and time of readings and stores these readings until they are downloaded to a computer interface unit and overlaid on a computerized compact disc mapping program for analysis.

. . .

That based upon the affiant's experience, the [GPS] tracking devices internal battery packs limited use necessitates the use of the suspect's automobile battery power in order to effectively install, monitor, and maintain the [GPS] tracking device over an extended period of time . . . .[]

. . .

5

Your affiant is aware that persons involved in criminal activities or conspiracies maintain the means and fruits of their violations, often in remote locations including garages, homes and storage sheds. Your affiant believes that the installation of the [GPS] tracking device has been shown to be a successful supplement to visual surveillance of the vehicle due to the inherent risks of detection of manual, visual surveillance by the target of law enforcement personnel. The [GPS] tracking device lessens the risk of visual detection by the suspect and is generally considered more reliable since visual surveillance often results in the loss of sight of the Target Vehicle.

On the same day Ricksecker requested authorization, the circuit court issued an order granting her request to install and monitor a GPS tracking device on Sveum's vehicle.  The court concluded that "[b]ased on the information provided in the affidavit submitted by Detective Ricksecker, the court finds that there is probable cause to believe that the installation of a tracking device in the below listed vehicle is relevant to an on-going criminal investigation and that the vehicle is being used in the commission of a crime of stalking . . . ." The court ordered the following:

1. The State[']s request to install and monitor a tracking device on the below listed vehicle is granted based on the authority granted in [*United States v. Karo*, 468 U.S. 705, 104 S. Ct. 3296, 82 L.Ed.2d 530 (1984)].

2. The Madison Police Department is authorized to place an electronic tracking device on a 1990 black Beretta with a license plate number of 754 ELL and a VIN of 1G1LZ14A2LY130646, and they are hereby authorized to surreptitiously enter and reenter the vehicle and any buildings and structures containing the vehicle or any premises on which the vehicle is located to install, use, maintain and conduct surveillance and monitoring of the location and movement of a mobile electronic tracking device in the vehicle and any and all places within or outside the jurisdiction of Iowa or Dane County, including but not limited to private residence and other locations not open to

visual surveillance; to accomplish the installation, agents are authorized to obtain and use a key to operate and move the vehicle for a required time to a concealed location and are authorized to open the engine compartment and trunk areas of the vehicle to install the device.

3. It is further ordered that the Madison Police Department shall remove the electronic tracking device as soon as practicable after the objectives of the surveillance are accomplished or not later than 60 days from the date the order is signed unless extended by this court or another court of competent jurisdiction.

In the early morning hours of April 23, 2003, Ricksecker and three other law enforcement officers located Sveum's vehicle parked in the driveway of 2426 Valley Road, Cross Plains. A battery-powered GPS tracking device was attached to the "undercarriage" of Sveum's vehicle with magnetic equipment and tape. The officers did not open the engine compartment or trunk area of the vehicle while installing the GPS. Because of the limited battery life of the GPS, the officers replaced the GPS twice. Both replacement devices were attached to Sveum's vehicle in the same manner in which the first was attached, *i.e.*, to the undercarriage of the vehicle with magnetic equipment and tape while parked in the driveway of 2426 Valley Road, Cross Plains. The third and final GPS was removed from Sveum's vehicle on May 27, 2003.

Upon removal of the GPS devices, the stored information on each of the GPS devices was downloaded and then stored on a disk. The information from the disk was put on a map so the officers could see where Sveum's vehicle had traveled.

The GPS device revealed data incriminating Sveum. The GPS data indicated that on April 25, 2003, Sveum's vehicle traveled to a location 468 feet from Johnson's residence, and his vehicle remained there from 8:14 p.m. to 9:08 p.m. Sveum's vehicle then traveled to a shopping mall near Mineral Point Road and the Beltline Highway and remained there from 9:16 p.m. to 9:19 p.m. Phone records indicated that at 9:17 p.m. Johnson received a hang-up call from a pay phone located near the shopping mall where Sveum's vehicle was. Additionally, the GPS data

demonstrated that on April 26, 2003, Sveum's vehicle traveled to a location 277 feet from Johnson's residence and remained there from 8:28 p.m. to 9:43 p.m.

Based, in part, on the above-described tracking data from the GPS devices, the police obtained two additional search warrants. One warrant authorized the police to search the premises located at 2426 Valley Road, Cross Plains and Sveum's vehicle.   The search revealed evidence incriminating Sveum, including photos of Johnson, a handwritten chronological log recording sightings of Johnson and letters sent to his sister, Renee Sveum, asking for information about Johnson.   The other warrant authorized the police to search the premises located at 6685 County Trunk Highway K, Renee Sveum's residence, which did not reveal any incriminating evidence.

On August 4, 2003, the State filed a complaint charging Sveum[] with aggravated stalking as a party to a crime contrary to Wis. Stat. § 940.32(3)(b) (2001–02)[] and Wis. Stat. § 939.05 (2001–02). Sveum filed a motion to suppress all information obtained from the GPS device, arguing that it was unlawfully obtained in violation of the Fourth Amendment.[] The circuit court denied the motion on the grounds that installing and monitoring the GPS device was not a search. While the circuit court did not specifically address whether the court order authorizing police use of the GPS device was a warrant, it noted that the affidavit provided sufficient probable cause to obtain the order.

*State v. Sveum*, 2010 WI 92, ¶¶ 4-12, 328 Wis. 2d 369, 379-86, 787 N.W.2d 317, 322-25 (footnotes omitted).

In October 2006, a jury found Sveum guilty as charged.  In February 2007, the circuit court sentenced Sveum to serve 7½ years in prison, followed by 5 years of extended supervision. After sentencing, the circuit court denied Sveum's motion to appoint postconviction counsel, finding that he failed to establish indigency.

Subsequently, Sveum filed a *pro se* motion for post-conviction relief, seeking a new trial on various grounds, all of which the circuit court rejected.

Sveum continued to represent himself on direct appeal, asserting that the circuit court erred by denying his pretrial motion to suppress tracking information obtained with a GPS tracking device attached to his car because the warrant authorizing police to place that device on his car was overly broad.  Sveum argued further that his conviction was obtained with evidence that was seized in violation of his right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and the Wisconsin Electronic Surveillance Control Law, Wis. Stat. §§ 968.27–.33.  Sveum raised the following additional arguments:  (1) the warrant obtained to search his home and his car was not supported by adequate probable cause or particularity with respect to the items sought; (2) the circuit court erred by admitting evidence of his prior stalking conviction; (3) he was denied effective assistance of counsel during jury selection and trial; and (4) there was an error in the jury instruction on one element of the charged offense.  The Wisconsin Court of Appeals rejected all of Sveum's arguments and affirmed the conviction.  *State v. Sveum*, 2009 WI App 81, 319 Wis. 2d 498, 769 N.W.2d 53.

Sveum then appealed by filing a *pro se* petition for review with the Wisconsin Supreme Court.  The Wisconsin Supreme Court granted review to determine whether the circuit court erred by denying Sveum's motion to suppress evidence obtained with the

GPS tracking device attached to his car.  More specifically, the Wisconsin Supreme Court considered the following issues: (1) whether the installation of a GPS tracking device to Sveum's car violated the Fourth Amendment's prohibition of unreasonable searches and seizures, as well as the corresponding guarantee found in Article I, Section 11 of the Wisconsin Constitution; and (2) whether the court order authorizing the installation and monitoring of a GPS device on Sveum's vehicle constituted a valid warrant.  The Wisconsin Supreme Court answered the second issue in the affirmative, concluding that the officers' execution of the warrant to install a GPS and monitor Sveum's car was valid.  In light of that conclusion, the Wisconsin Supreme Court found it unnecessary to resolve the first issue and affirmed the conviction.  *State v. Sveum*, 2010 WI 92, 328 Wis. 2d 369, 787 N.W.2d 317.  Thereafter, the United States Supreme Court denied Sveum's petition for a writ of certiorari.  *Sveum v. Wisconsin*, ─ U.S. ─, 131 S. Ct. 803 (2010).

After his direct appeal was exhausted, Sveum filed a motion for postconviction relief under Wis. Stat. § 974.06 in state court, arguing as follows: (1) he was denied the appointment of counsel at public expense during his direct appeal in violation of the Fourteenth Amendment to the United States Constitution; (2) his conviction under a retrospective application of the amended aggravated stalking statute violated the Ex Post Facto Clause found in Article I, Section 10, of the United States Constitution; and (3) he was denied effective assistance of counsel because his trial attorney failed to file a motion

to dismiss the criminal complaint against him.  The circuit court denied Sveum's motion on April 25, 2011, finding that these claims were barred from review in light of Sveum's failure to raise them on direct appeal.  The Wisconsin Court of Appeals affirmed the circuit court's decision in an unpublished opinion.  *See State v. Sveum*, No. 2011AP001221 (Wis. Ct. App. April 26, 2012).  The Wisconsin Supreme Court summarily denied Sveum's petition for review of that decision.

Thereafter, Sveum filed a petition for a writ of habeas corpus with the Wisconsin Supreme Court.  Sveum argued that his imprisonment was illegal because: (1) his conviction was obtained with evidence seized with a GPS tracking device without a valid warrant in violation of the Fourth Amendment; and (2) the search exceeded the scope of the court order authorizing police to track and monitor his movements with a GPS device.  The Wisconsin Supreme Court summarily denied Sveum's petition for a writ of habeas corpus on September 17, 2012.  *Sveum v. Pugh*, No. 2012AP001054-W.

In this pending federal habeas corpus petition, Sveum now seeks relief from his aggravated stalking conviction pursuant 28 U.S.C. § 2254.  Sveum raises two grounds for relief under the Fourth Amendment:  (1) the court order authorizing police to install and monitor a GPS device on his vehicle did not meet the constitutional requirements for a warrant; and (2) the court order authorizing police to install and monitor a GPS device on his vehicle was not "reasonably executed" by police.  In addition, Sveum argues that he is entitled to relief because: (1) he was denied appointment of counsel on direct appeal

11

after the State Public Defender's Office determined that he was not indigent; (2) he was denied effective assistance of counsel when his trial attorney failed to file a motion to dismiss the criminal complaint under the Ex Post Facto Clause found in Article I, Section 10, of the United States Constitution; and (3) he was denied access to courts while his direct appeal was pending because he was not allowed "direct access to the prison's electronic law library." (Dkt. # 1, *Petition*.)

OPINION

On summary judgment, the respondent argues that Sveum's Fourth Amendment claims are barred from review by the United States Supreme Court's holding in *Stone v. Powell*, 428 U.S. 465 (1976).  The respondent argues further that review of Sveum's remaining claims is barred by the doctrine of procedural default.  The court agrees.

**I.   *Stone v. Powell* bars federal habeas review of Fourth Amendment claims**

In *Stone v. Powell*, 428 U.S. at 494, the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  In other words, a state prisoner's Fourth Amendment claim must be vindicated in state court (and ultimately by the United States Supreme Court by seeking certiorari review), rather than by federal collateral relief, "unless the state courts

deprived him of a full and fair opportunity to litigate the claim." *Watson v. Hulick*, 481 F.3d 537, 541 (7th Cir. 2007).

As the Seventh Circuit has clarified, a defendant receives a "full and fair" opportunity to litigate if

> . . . (1) he clearly apprised the state court of his Fourth Amendment claim along with the factual basis for that claim, (2) the state court carefully and thoroughly analyzed the facts, and (3) the court applied the proper constitutional case law to those facts.

*Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005).  A federal habeas corpus court's "role is not to second-guess the state court on the merits of the petitioner's claim, but rather to assure [itself] that the state court heard the claim, looked to the right body of case law, and rendered an intellectually honest decision."  *Monroe v. Davis*, 712 F.3d 1106, 1114 (7th Cir. 2013) (citing *Hampton v. Wynant*, 296 F.3d 560, 563-64 (7th Cir. 2002) (citation omitted)).

So long as the state court gives a claim adequate and unbiased consideration, it is irrelevant whether the court ultimately reaches the correct decision. *Cabrera v. Hinsley*, 324 F.3d 527, 531-32 (7th Cir. 2003). To establish that his opportunity for state court review process was not full and fair, a petitioner must show that it was a "sham," which was subverted or undermined in some obvious and "disturbing" way.  *Id*.  Sveum cannot begin to meet this burden of proof.

As set forth in more detail above, the merits of Sveum's Fourth Amendment claims were considered at length by the circuit court, the Wisconsin Court of Appeals, and the Wisconsin Supreme Court. Sveum filed more than one pretrial motion to suppress, challenging the legality of the court order authorizing installation of a GPS tracking device on his car. The circuit court denied Sveum's motions after holding a pretrial evidentiary hearing. The Wisconsin Court of Appeals later affirmed that decision, rejecting constitutional and statutory challenges to the use of GPS technology to track the movement of his car on public roads. *State v. Sveum*, 2009 WI App 81, 319 Wis. 2d 498, 769 N.W.2d 53. In doing so, the court held that there was no Fourth Amendment violation because there was no "search or seizure" when police surreptitiously installed a GPS tracking device on Sveum's car and tracked its movements on public thoroughfares because those movements, theoretically, could have been lawfully observed by police without a warrant with the naked eye, although at great expense of time and resources. *Sveum*, 2009 WI App 81, ¶¶ 6-15, 19. Finally, the Wisconsin Supreme Court granted review and affirmed the court of appeals' decision, albeit on the alternative theory that police had valid judicial authorization based on probable cause equivalent to a warrant to install the GPS tracking device on Sveum's car and to track its movements on public roads. *State v. Sveum*, 2010 WI 92, ¶¶ 39-74, 328 Wis. 2d 369, 787 N.W.2d 317.

Moreover, the written decisions by these state courts issued in connection with these proceedings confirm that the state courts thoughtfully considered the merits of Sveum's claims while applying Fourth Amendment principles.  In short, Sveum fails to show that the hearing process was subverted in any way or that his opportunity for state court review was anything less than full and fair.  Accordingly, review of his Fourth Amendment claims is precluded by *Stone v. Powell*.

## II.    Procedural Default

In addition to his Fourth Amendment claims, Sveum contends that he is entitled to relief because he was denied:  (1) appointment of counsel on direct appeal after the State Public Defender's Office determined that he was not indigent; (2) effective assistance of counsel when his trial attorney failed to file a motion to dismiss the criminal complaint under the Ex Post Facto Clause found in Article I, Section 10, of the United States Constitution; and (3) access to courts while his direct appeal was pending as a result of not being allowed "direct access to the prison's electronic law library."  Because Sveum attempted to present all of these claims for the first time in a motion for postconviction relief pursuant to Wis. Stat. § 974.06, they were deemed defaulted by the state courts for procedural reasons.  The respondent argues, therefore, that these claims are also barred from federal review by the doctrine of procedural default.

On the other hand, Sveum disputes that he committed a procedural default, arguing that the state courts improperly rejected his claims on postconviction review.  To

address this argument, the court must first address briefly the procedures established for the review of criminal convictions in Wisconsin. *See, e.g., Page v. Frank*, 343 F.3d 901, 905-06 (7th Cir. 2003) (summarizing postconviction procedures in Wisconsin before applying the doctrine of procedural default on federal habeas review).

The procedures governing the review of Wisconsin criminal convictions are set forth in Wis. Stat. §§ 974.02 and 974.06.  After a conviction in a Wisconsin circuit court, a defendant's first avenue of relief is a postconviction motion under § 974.02.[1] This motion is filed in the circuit court in which the conviction was entered.  Arguments concerning sufficiency of the evidence or issues previously raised before the trial court need not be raised in this motion in order to preserve the right of appeal with respect to them. *See* Wis. Stat. § 974.02(2); *State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 556 N.W.2d 136, 137 n.3 (1996); *State v. Hayes*, 2004 WI 80, ¶ 54, 273 Wis. 2d 1, 24, 681 N.W.2d 203, 214 (2004).  Any other claim, such as ineffective assistance of counsel, must first be brought in a motion under § 974.02. *See Rothering*, 556 N.W.2d at 137. If the circuit court denies relief on an issue is raised in the § 974.02 motion, the defendant

---

[1] Wis. Stat. § 974.02 provides:

(1) A motion for postconviction relief other than under s. 974.06 or 974.07(2) by the defendant in a criminal case shall be made in the time and manner provided in ss. 809.30 and 809.40 . . . .

(2) An appellant is not required to file a postconviction motion in the trial court prior to an appeal if the grounds are sufficiency of the evidence or issues previously raised.

then may appeal to the Wisconsin Court of Appeals. *See, e.g., State v. Balliette*, 2011 WI 79, ¶¶ 28-31, 336 Wis. 2d 358, 373-74, 805 N.W.2d 334, 341 (observing that a motion under § 974.02 is a prerequisite to raising an ineffective-assistance claim on appeal).

After the times for filing postconviction motions under § 974.02 and for taking the subsequent direct appeal have expired, a defendant has a limited right of collateral review pursuant to Wis. Stat. § 974.06.[2] *See State v. Henley*, 2010 WI 97, ¶ 54, 328 Wis. 2d 544, 569, 787 N.W.2d 350, 362-63. A motion for collateral review under § 974.06 follows the same procedural path as the direct appeal. The initial motion is filed in the circuit court and subsequent appeals, if any, are made to the Wisconsin Court of Appeals. Motions under § 974.06 are "limited to matters of constitutional or jurisdictional dimension." *State v. Carter*, 131 Wis. 2d 69, 81, 389 N.W.2d 1, 5 (1986); *Henley*, 2010 WI 97, ¶ 54, 328 Wis. 2d at 569. Procedural errors are not cognizable. *Carter*, 131 Wis. 2d at 81, 389 N.W.2d at 5-6.

Section 974.06(4) further limits the claims that may be raised collaterally, as follows:

> All grounds for relief available to a person under this section must be raised in his or her original, supplemental or amended motion. Any ground

---

[2] Wis. Stat. § 974.06(1) provides, in relevant part:

(1) After the time for appeal or postconviction remedy provided in s. 974.02 has expired, a prisoner in custody under sentence of a court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the U.S. constitution . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

> finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the person has taken to secure relief may not be the basis for a subsequent motion, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended motion.

Wis. Stat. § 974.06(4). The Wisconsin Supreme Court has further interpreted § 974.06(4) to exclude all issues that were or could have been raised in a § 974.02 postconviction motion or appeal, including constitutional issues, unless the defendant provides "sufficient reason" for not raising the issues in the earlier proceedings. *See Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157, 162 (1994).

With respect to Sveum's motion under § 974.06, the circuit court held that the above-referenced constitutional claims were barred because he easily could have presented them along with the claims he raised on direct review:

> A review of Sveum's initial and reply briefs to the circuit court shows that Sveum was able to conduct legal research and formulate legal theories. He wrote four detailed, sell-supported, initial briefs totaling 67 pages and three reply briefs totaling 35 pages. At the circuit court level, he formulated multiple legal challenges to his conviction that fall into three main categories: the GPS tracking device; an erroneous jury instruction[;] and[] ineffective assistance of counsel. Most important for our purposes is the ineffective assistance of counsel claim, the same claim he now argues he did not have meaningful access to legal materials to properly research.

> In his *pro se* motion filed on September 18, 2007, Sveum listed eight separate reasons why he believed his counsel was ineffective. Sveum claimed his trial counsel was ineffective (1) during voir dire; (2) for failing to request curative instructions regarding his previous conviction; (3) for failing to admit evidence showing Sveum's appeal of his previous conviction; (4) for failing to object to certain questions asked to witnesses;

(5) for failing to cross-examine forensic examiners; (6) for failing to move the court in limine to exclude the testimony of the forensic examiner; [(7)] for failing to adequately cross-examine another witness; and, (8) for failing to request a cautionary instruction on other acts evidence.

Sveum now brings this action seeking to add one more reason his trial counsel was ineffective — that he should have objected to the criminal complaint. Merely because Sveum has now learned of one more possible reason that his trial counsel may have been ineffective does not mean that his access to legal materials was hindered.  Sveum offers no reason to explain why the access he had to legal materials was sufficient to put forth argument[s] for eight reasons, but was somehow insufficient to provide him materials to formulate his current reason for an ineffective assistance of counsel claim. . . .

. . . .

Sveum cannot overcome the legal bar of *Escalona-Naranjo* because he does not present a "sufficient reason" for why these new claims could not have been brought during his direct appeal.  He does not present evidence that shows his access to legal materials was restricted, and even if his access were restricted, he fails to show that this restriction or deficiency impeded or hindered his ability to present his legal claims.

(Dkt. # 9, Exh. L, *State v. Sveum*, 03CF1783 (April 25, 2011) App. 8-10.)  The circuit court concluded further that Sveum could have challenged the denial of appointed counsel during his direct appeal and that he failed to propose a sufficient reason for not doing so.  (*Id.* at App. 11-12.)  Absent a sufficient reason for his default, the circuit court concluded that his proposed claims were procedurally barred by *Escalona-Naranjo*.  (*Id.*)

The Wisconsin Court of Appeals affirmed the circuit court's decision, agreeing that Sveum failed to establish a sufficient reason for his failure to present his claims properly on direct appeal:

Wisconsin Stat. § 974.06(4) requires criminal defendants to "consolidate all their postconviction claims into one motion or appeal." *Escalona-Naranjo*, 185 Wis. 2d at 178. Successive motions and appeals, including those raising constitutional claims, are procedurally barred unless the defendant can show a "sufficient reason" why the newly alleged errors were not previously or adequately raised. *Id.* at 181.

In this case, Sveum filed a series of three *pro se* postconviction motions for new trial, followed by a direct appeal under Wis. Stat. Rule 809.30, ultimately resulting in a decision by the Wisconsin Supreme Court. Sveum acknowledges that he did not raise his current claims challenging the complaint and the determination of his financial ineligibility for publicly-appointed postconviction counsel in his original postconviction proceedings. He asserts, however, that he had a sufficient reason for his failure to do so — namely, that court-imposed restrictions on his computer access in prison deprived him of the ability to conduct sufficient legal research to develop those claims by the deadline for filing postconviction motions. We do not find Sveum's arguments persuasive.

First, this court has the power to extend the deadline for filing postconviction motions based upon good cause, and it is our standard practice to grant such extensions liberally based upon the difficulty of conducting litigation from prison. Sveum does not explain why he could not simply have requested an extension if he was having difficulty meeting his deadline due to computer restrictions.

Second, Sveum has not explained why any extensive legal research was required to challenge the determination that he did not meet the indigency requirements for the appointment of counsel, or the sufficiency of the complaint to establish probable cause for bindover. Those would appear to be primarily fact-based challenges.

Third, even if Sveum's claim that the complaint violated the ex post facto clause may have required more legal research, the record does not support Sveum's assertion that he lacked sufficient access to legal materials to provide meaningful access to the court. Sveum was able to submit three motions totaling thirty-seven pages and including references to forty-seven different cases by the deadline, and in those motions he developed several arguments sufficiently well to garner review by the Wisconsin Supreme

> Court.  Sveum has not convinced us that the arguments he failed to rise were anymore legally complex than those he was able to raise given his limited resources.  Therefore, we are not persuaded that he had a sufficient reason for failing to consolidate his additional claims into his original postconviction proceedings.

(Dkt. # 9, Exh. J, *State v. Sveum*, 2011AP001221 (Wis. Ct. App. April 26, 2012) at 2-3).

Sveum appealed further, but the Wisconsin Supreme Court denied his petition for review.

Sveum concedes that the state courts rejected his claims for procedural reasons, invoking the rule in *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994). He disagrees with the state court's decision, but he does not show that the rule was improperly applied.  To the extent that the state courts properly relied on *Escalona-Naranjo*, this rule has been recognized as an "independent and adequate state law ground of procedural default" that is sufficient to bar federal habeas corpus review.  *Perry v McCaughtry*, 308 F.3d 682, 692 (7th Cir. 2002).   In that respect, the doctrine of procedural default precludes a federal court from reaching the merits of a habeas petition when either: (1) the claim was not fairly presented to the state courts and the opportunity to raise that claim now has passed; or (2) the claim was presented to the state courts and was denied on the basis of an adequate and independent state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).  A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice by showing the court's failure to consider the claim would result in a

fundamental miscarriage of justice. *See id*. at 750. Here, Sveum neither attempts to demonstrate cause or actual prejudice, nor does the record disclose any.

Finally, Sveum invokes no fundamental-miscarriage-of-justice exception, which applies only where a petitioner supplements a constitutional claim with a colorable showing of factual, as opposed to legal, innocence. *See McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (quoting *Kuhlman v. Wilson*, 477 U.S. 436, 454 (1986)); *see also Murray v. Carrier*, 477 U.S. 478 (1986) (recognizing a narrow exception to the cause-and-prejudice requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense). Under this exception, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 319-22 (1995)). Again, Sveum makes no such showing here. Accordingly, his remaining claims are procedurally barred from review.

III.  **Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial

showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack,* 529 U.S. at 484.

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case.  For the reasons already stated, the court concludes that petitioner has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court.  Because reasonable jurists would not otherwise debate whether a different result was required, no certificate of appealability will issue.

23

ORDER

IT IS ORDERED THAT:

1. The petition filed by Michael A. Sveum for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED and this case is DISMISSED with prejudice.  The clerk of court is directed to enter judgment for respondent and close this case.

2. A certificate of appealability is DENIED.  If petitioner wishes he may seek a certificate from the court of appeals under Fed. R. App. 22.

Entered this 4th day of February, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

24